# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 21, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP203**

Cir. Ct. No. 2023ME13

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

IN THE MATTER OF THE CONDITION OF F.W.R.:

VERNON COUNTY,

PETITIONER-RESPONDENT,

V.

F.W.R.,

RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Vernon County: DARCY JO ROOD, Judge. *Affirmed*.

¶1      TAYLOR, J.[1]  F.W.R. appeals an order for involuntary commitment under WIS. STAT. § 51.20.  As relevant to this appeal, the circuit court determined that F.W.R. satisfied the criteria for involuntary commitment under § 51.20 because of his dependency on alcohol.  On appeal, F.W.R. argues that the involuntary commitment order should be vacated for three reasons:  (1) a person cannot be committed under § 51.20 for the purpose of treating alcoholism; (2) the court did not follow the proper procedures during the probable cause hearing; and (3) Vernon County ("the County") failed to satisfy its burden of showing that F.W.R. met the criteria for an involuntary commitment by clear and convincing evidence.  For the following reasons, I reject F.W.R.'s arguments and affirm.

## BACKGROUND

¶2      On May 16, 2023, the County filed a three-party Petition for Examination of F.W.R. (the petition) pursuant to WIS. STAT. § 51.20 for an involuntary commitment for treatment.  The petition was signed by Dr. James Deline—F.W.R.'s personal physician—as well as a supervisor and a case manager from the Vernon County Community Support Program ("CSP"), in which F.W.R. had been participating since 2021 and receiving outpatient services for his alcohol use and mental health.  The petition stated that F.W.R. had been the subject of a previous WIS. STAT. ch. 51 commitment to treat his alcohol use, but he resumed drinking alcohol soon after that commitment expired in April 2022.[2]  In a written statement attached to the petition, F.W.R.'s CSP caseworker reported the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] It is unclear from the record whether F.W.R.'s previous commitment was under WIS. STAT. § 51.20 or a different provision of WIS. STAT. ch. 51.

following. F.W.R. had regularly attended substance abuse counseling and had participated in detoxification treatments on four occasions in 2022. F.W.R. was aware that he had significant health issues as a direct result of his alcohol use and that his continued alcohol use would exasperate these issues, resulting in premature death. F.W.R. had recently reported that he had been drinking up to three quarts of alcohol per day, and had missed his appointments for services in the community.

¶3 Dr. Deline's written statement attached to the petition stated as follows. F.W.R.'s drinking was causing serious health problems and F.W.R. had been hospitalized twice for alcohol detoxification, including a hospitalization in December 2022 that required F.W.R. to be intubated and placed on a ventilator. F.W.R.'s current level of alcohol use would likely lead to more "catastrophic hospitalizations" and, ultimately, his premature death. Based on the allegations in the petition, the circuit court issued an order for detention and scheduled a probable cause hearing on the petition.

¶4 On May 22, 2023, the circuit court held a probable cause hearing on the petition. At the hearing, Dr. Deline and Dr. Benjamin Strand—a psychiatrist appointed by the court to examine F.W.R.—testified in favor of an involuntary commitment. The circuit court determined that there was probable cause to believe that F.W.R. satisfied the criteria for involuntary commitment under WIS. STAT. § 51.20(1) for drug dependence or mental illness and that F.W.R. was dangerous to himself or others. The court ordered that F.W.R. continue to be detained until the final hearing on the petition and ordered that he be examined by Dr. Jeffrey Marcus, a psychiatrist, and Dr. Thomas Ledoux, a psychologist. Drs. Marcus and Ledoux each examined F.W.R. and provided independent reports to the court.

¶5    On May 31, 2023, the circuit court held the final hearing on the petition. Dr. Marcus testified that F.W.R. satisfied all of the requirements for commitment for drug dependence and mental illness under WIS. STAT. § 51.20, and he recommended that F.W.R. be committed to a locked inpatient facility. Dr. Ledoux agreed that F.W.R. satisfied the requirements for commitment, but he believed that F.W.R. should be committed on an outpatient basis.[3]

¶6    The circuit court determined that there was clear and convincing evidence that F.W.R. satisfied the criteria for involuntary commitment under WIS. STAT. § 51.20. Specifically, the court determined that F.W.R. was both drug dependent and mentally ill, a proper subject for treatment, and dangerous to himself under § 51.20(1)(a)2.c. The court ordered six months of commitment to the County and designated the "maximum level of inpatient facility" as locked inpatient care. *See* § 51.20(13)(c)2. F.W.R. appeals.[4]

---

[3] Dr. Ledoux wrote in his report and testified at the hearing that F.W.R. was not "dangerous" for the purposes of WIS. STAT. § 51.20 because his judgment was not impaired by mental illness. However, after further questioning from the circuit court, Dr. Ledoux appeared to admit that F.W.R. was "dangerous" because his judgment was impaired by his consumption of alcohol. As a result, the only disagreement between Drs. Marcus and Ledoux was whether F.W.R. needed inpatient treatment.

[4] F.W.R.'s six-month commitment expired in November 2023, before which the circuit court ordered a one-year extension based on a stipulation between the parties that F.W.R. was mentally ill and would receive outpatient services. F.W.R. does not challenge the extension of his commitment.

F.W.R. argues that his appeal of the expired initial commitment order is not moot due to the collateral consequences of that order. *See Sauk County v. S.A.M.*, 2022 WI 46, ¶21, 402 Wis. 2d 379, 975 N.W.2d 162. Because the County does not dispute F.W.R.'s argument on mootness in this appeal, the issue is conceded by the County. *See Shadley v. Lloyds of London*, 2009 WI App 165, ¶26, 322 Wis. 2d 189, 776 N.W.2d 838 ("Arguments not rebutted on appeal are deemed conceded.").

4

## DISCUSSION

¶7      As stated, on appeal, F.W.R. argues that his involuntary commitment was improper for three reasons:  (1) a person cannot be committed under WIS. STAT. § 51.20 for the purpose of treating that person's alcoholism; (2) the circuit court did not follow the proper procedures during the probable cause hearing; and (3) the County failed to satisfy its burden of showing that F.W.R. met the criteria for commitment by clear and convincing evidence.

¶8      For the following reasons, I reject these arguments and conclude that, pursuant to WIS. STAT. § 51.20, a person may be involuntarily committed for treatment for alcoholism; the circuit court followed the proper procedures in the probable cause hearing; and the County met its burden of proving by clear and convincing evidence that F.W.R. was drug dependent and dangerous.

### I.  Standard of Review

¶9      A person may be involuntarily committed for treatment under WIS. STAT. § 51.20 if the individual is:  (1) "mentally ill or … drug dependent or developmentally disabled"; (2) "a proper subject for treatment"; and (3) "dangerous" under one of five standards set forth in § 51.20(1)(a)2. Sec. 51.20(1)(a).  The County has the burden to prove all required facts by clear and convincing evidence.  ***Langlade County v. D.J.W.***, 2020 WI 41, ¶23, 391 Wis. 2d 231, 942 N.W.2d 277.  Whether the County has met its burden involves questions of law and fact.  ***Id.***, ¶24.  This court upholds a circuit court's findings of fact unless they are clearly erroneous, but independently reviews whether the facts satisfy the statutory standards for commitment.  ***Id.***, ¶¶24-25.  "Whether a party has met its burden of proof is a question of law that an appellate court reviews

de novo." ***Outagamie County v. Melanie L.***, 2013 WI 67, ¶88 n.25, 349 Wis. 2d 148, 833 N.W.2d 607.

¶10　This case also involves the interpretation of the involuntary commitment statutes under WIS. STAT. ch. 51. Statutory interpretation and application are questions of law that this court reviews independently. ***D.J.W.***, 391 Wis. 2d 231, ¶25. Statutory interpretation "'begins with the language of the statute.'" ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). Statutory language is given "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***Id.*** "'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.'" ***Id.***, ¶46 (citation omitted).

## II.　Commitment for Alcoholism Under WIS. STAT. § 51.20

¶11　As noted, F.W.R. argues that a person cannot be involuntarily committed under WIS. STAT. § 51.20 for the purpose of treating alcoholism because § 51.20 authorizes commitment of a person who is "drug dependent," which he contends does not include alcoholism. For the following reasons, I reject F.W.R.'s argument and conclude that § 51.20 authorizes an involuntary commitment for the treatment of alcoholism.

## A. WISCONSIN STAT. § 51.20 Authorizes Involuntary Commitments for Alcoholism

¶12    As pertinent here, under WIS. STAT. § 51.20, a person who is "drug dependent" may be involuntarily committed for treatment.   Sec. 51.20(1)(a)1.[5] For the purposes of WIS. STAT. ch. 51, the term "drug dependence" is specially defined as "a disease that is characterized by a person's use of one or more drugs that is beyond the person's ability to control to the extent that the person's physical health is substantially impaired or his or her social or economic functioning is substantially disrupted."   WIS. STAT. § 51.01(8).   Whether "drug dependence" for purposes of § 51.20 includes alcohol dependence is a matter of first impression in Wisconsin.

¶13    Although the word "drug" is not specifically defined in WIS. STAT. ch. 51, other definitions set forth under WIS. STAT. § 51.01 refer to alcohol as a "drug" on which a person can be dependent.   Specifically, the term "alcoholism" is defined as "a disease which is characterized by the *dependency of a person on the drug alcohol*, to the extent that the person's health is substantially impaired or endangered or his or her social or economic functioning is substantially disrupted."   Sec. 51.01(1m) (emphasis added).   This definition indicates not only that alcohol is considered a drug for the purposes of ch. 51, but also that alcoholism is a category of drug dependence involving a person's dependence on the drug alcohol.

---

[5] Here, in addition to determining that F.W.R. was drug dependent, the circuit court also determined that F.W.R. was "mentally ill" for the purposes of WIS. STAT. § 51.20.  Because the issue of drug dependence is dispositive, I need not address the issue of mental illness.  *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 252 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶14    Had the legislature so intended, it could have carved out an explicit exclusion for alcoholism in the definition of "drug dependence."  For example, for the purposes of an involuntary commitment under WIS. STAT. ch. 51, the definition of "mental illness" explicitly excludes "alcoholism."   WIS. STAT. § 51.01(13)(b).[6]  In contrast, the definition of "drug dependence" does not contain any such exclusion for alcoholism.   Had the legislature intended to exclude alcoholism from the definition of "drug dependence," it could have done so.  *See Milwaukee J. Sentinel v. City of Milwaukee*, 2012 WI 65, ¶36, 341 Wis. 2d 607, 815 N.W.2d 367 ("[I]f the legislature had intended to accomplish what a party is urging on the court …, the legislature knew how to draft that language and could have done so had it wished.").

¶15    Other statutes in WIS. STAT. ch. 51 also support the conclusion that "drug dependence" includes alcoholism.   *See Kalal*, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used" and "in relation to the language of surrounding or closely-related statutes.").  For instance, the legislature's statement of policy for ch. 51 provides:  "It is the policy of the state to assure the provision of a full range of treatment and rehabilitation services in the state for … *alcoholism and other drug abuse*."  WIS. STAT. § 51.001(1) (emphasis added).

¶16    Surrounding statutes, such as WIS. STAT. § 51.45, also underscore this point.  The continuum of treatment options set forth under § 51.45—from

---

[6] WISCONSIN STAT. § 51.01(13)(b) provides: "'Mental illness', for purposes of involuntary commitment, means a substantial disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life, but does not include alcoholism."

voluntary admission to a treatment facility to involuntary commitment—applies to individuals who consume "alcohol beverages or other drugs," § 51.45(13), or who are "[i]ncapacitated by alcohol or another drug," § 51.45(11)-(12). Further, § 51.45(2)(f) defines the term "[i]ntoxicated person" as including "a person whose mental or physical functioning is substantially impaired as a result of the use of alcohol … or another drug." Sec. 51.45(2)(f). By referring to "other drugs" or "another drug" after "alcohol," these statutes indicate that the legislature understood that the word "drug" includes alcohol. *See **Stroede v. Society Ins.**,* 2021 WI 43, ¶14, 397 Wis. 2d 17, 959 N.W.2d 305 ("'[W]hen general words follow specific words in the statutory text, the general words should be construed in light of the specific words listed. Thus, the general word or phrase will encompass only things of the same type as those specific words listed.'" (citation omitted)). Accordingly, I reject F.W.R.'s argument that alcoholism does not constitute a drug dependence under the scope of WIS. STAT. § 51.20.

### B. Commitment for Alcoholism Under WIS. STAT. § 51.20 Does Not Render WIS. STAT. § 51.45(13) Superfluous.

¶17 F.W.R. argues that an involuntary commitment for treatment of alcoholism is solely governed by WIS. STAT. § 51.45(13). According to F.W.R., if a person could be involuntarily committed for alcoholism under WIS. STAT. § 51.20, then the statutory procedures set forth in § 51.45(13) would be rendered superfluous. *See **Kalal**,* 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."). This argument fails for the following reasons.

¶18 First, although there are similarities between WIS. STAT. §§ 51.20 and 51.45, including the procedural framework for involuntary commitments, there are material differences between the two statutes, such as the factual findings

a court must make, the legal standard that must be met, and the length of the commitment.

¶19 For instance, WIS. STAT. § 51.20 requires clear and convincing proof that the "drug dependent" individual is "dangerous" under one of five standards set forth in § 51.20(1)(a)2.a.-e. ***Winnebago County v. S.H.***, 2020 WI App 46, ¶8, 393 Wis. 2d 511, 947 N.W.2d 761. Here, the circuit court determined that F.W.R. satisfied the dangerousness standard set forth under § 51.20(1)(a)2.c. as a matter of law. Under this dangerousness standard, the County must provide evidence of recent acts or omissions demonstrating that the individual is a danger to himself or herself or to others. Sec. 51.20(1)(a)2.c. Further, under this standard, an individual is not "dangerous" if community services are available to protect the individual from physical injury or impairment and there is a reasonable probability that the individual will avail himself or herself of these services. Sec. 51.20(1)(a)2.c.[7]

¶20 In contrast, an involuntary commitment under WIS. STAT. § 51.45(13) requires proof that the individual "habitually lacks self-control as to the use of alcohol beverages or other drugs" and that the individual's use of alcohol beverages or other drugs "substantially impaired or endangered" the

---

[7] WISCONSIN STAT. § 51.20(1)(a)2.c. provides in pertinent part:

> [T]he subject individual … [e]vidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals. The probability of physical impairment or injury is not substantial under this [subdivision paragraph] if reasonable provision for the subject individual's protection is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services.

individual's health and "substantially disrupted" the individual's "social or economic functioning." Sec. 51.45(13)(a)1. Instead of requiring "recent acts or omissions" that demonstrate that the person is a danger to themselves or others (as is required under WIS. STAT. § 51.20(1)(a)2.c.), § 51.45(13) requires that the individual's lack of self-control be evidenced by a "pattern of conduct which is dangerous to the person or to others." Sec. 51.45(13)(a)2. Additionally, § 51.45(13) requires that there be a "relationship" between the individual's "alcoholic or drug dependent condition" and the individual's pattern of conduct during the 12 months immediately preceding the time of the petition. Sec. 51.45(13)(g)1.b. This section also requires that there be an "extreme likelihood" that the pattern of conduct will continue or repeat itself without the intervention of involuntary treatment or institutionalization. Sec. 51.45(13)(g)1.c.

¶21 Another difference between the two involuntary commitment statutes involves the duration of the initial commitment and extension of the commitment. Under WIS. STAT. § 51.20(13)(g)1., a circuit court may authorize an involuntary commitment for up to six months and can extend that commitment for a period not to exceed one year, with no specific statutory limit on the number of extensions that can be granted. Sec. 51.20(13)(g)1.[8] In contrast, WIS. STAT. § 51.45(13) only authorizes an involuntary commitment not to exceed 90 days and provides that the time period can be extended only one time for up to six months. Sec. 51.45(13)(h). Accordingly, § 51.20 authorizes a longer initial period of

---

[8] The extension of an involuntary commitment requires proof of the same three elements that must be proved for the initial involuntary commitment, except that, instead of proving dangerousness under one of the five standards set forth under WIS. STAT. § 51.20(1)(a)2.a.-e., the County may rely on the "'alternative evidentiary path' of § 51.20(1)(am)." *Winnebago County v. S.H.*, 2020 WI App 46, ¶8, 393 Wis. 2d 511, 947 N.W.2d 761 (citation omitted).

commitment and a longer extension of a commitment than § 51.45 and may be more appropriate for an individual struggling with a more significant drug dependency.

¶22 To be sure, there are some circumstances where an individual suffering from alcoholism may satisfy the conditions for involuntary commitment under both WIS. STAT. §§ 51.20 and 51.45(13). However, the foregoing examples demonstrate that § 51.20 is not a mirror image of § 51.45(13). In other words, §§ 51.20 and 51.45(13) perform different functions in that each statute imposes distinct standards that must be met for involuntary commitments and allow different lengths for initial involuntary commitments and extensions of the commitments. *See Milwaukee Dist. Council 48 v. Milwaukee County*, 2019 WI 24, ¶17, 385 Wis. 2d 748, 924 N.W.2d 153 (concluding that the canon against surplusage did not apply where two provisions of an ordinance "operate on different categories of [individuals] and perform different functions"). Therefore, involuntarily committing a person for treatment of alcoholism under § 51.20 does not render § 51.45(13) superfluous.

¶23 Second, F.W.R.'s argument that permitting involuntary commitments for alcoholism under WIS. STAT. § 51.20 would render WIS. STAT. § 51.45(13) superfluous rests on the flawed premises that an involuntary commitment under § 51.20 is limited to individuals who are dependent on drugs other than alcohol and that an involuntary commitment for alcoholism is only permitted under § 51.45(13). F.W.R. references the "history of [WIS. STAT. ch.] 51" to support this argument, citing a reference in case law to the enactments of new civil commitment laws in the 1970s, including "one for persons who are acutely mentally ill, developmentally disabled or drug dependent" (referencing § 51.20), and "another law for alcoholics" (referencing § 51.45). *State ex rel.*

12

***Watts v. Combined Cmty. Servs. Bd. of Milwaukee Cnty.***, 122 Wis. 2d 65, 72, 362 N.W.2d 104 (1985). F.W.R. also cites a case in which this court stated that a previous version of § 51.45(13) "concerns involuntary commitment of alleged alcoholics." ***State v. B.A.S.***, 134 Wis. 2d 291, 293, 397 N.W.2d 114 (Ct. App. 1986). F.W.R. does not develop any further argument or cite to any other relevant legal support for his argument.

¶24 It is correct that, in the not-so-distant past, WIS. STAT. § 51.45 was limited to persons needing treatment for alcoholism. *See* § 51.45(1) (through 2017 Wis. Act 34, enacted July 17, 2017) (stating that § 51.45 applies to "alcoholics and intoxicated persons"); *see also* ***State ex rel. Jacobus v. State***, 208 Wis. 2d 39, 49-50, 559 N.W.2d 900 (1997) (explaining that § 51.45 was patterned on the Uniform Alcoholism and Intoxication Treatment Act). This limitation is reflected in the cases that interpreted the previous version of § 51.45, including ***Watts*** and ***B.A.S.***, discussed above. In 2017, however, the legislature expanded the reach of § 51.45 to include individuals who are "drug dependent." *See* 2017 Wis. Act 34, § 20. As a result, § 51.45 now applies to "alcoholics, *persons who are drug dependent*, and intoxicated persons." Sec. 51.45(1) (emphasis added). The criteria for involuntary commitment under § 51.45(13) now require proof that the person "habitually lacks self-control as to the use of alcohol beverages *or other drugs*." Sec. 51.45(13)(a)1. (emphasis added).

¶25 Similarly, the definition of "alcoholism" set forth in WIS. STAT. § 51.01(1m) did not exist when WIS. STAT. § 51.45 was originally enacted. *See* WIS. STAT. § 51.01(1) (through 1985 Wis. Act 265, enacted Apr. 15, 1986). In 1986, the legislature created the definition of "alcoholism" which, as discussed above, specifies that alcohol is a drug on which a person can be dependent. *See* 1985 Wis. Act 265 (creating § 51.01(1m) to define "alcoholism," in part, as "a

disease which is characterized by the dependency of a person on the drug alcohol"). F.W.R.'s argument fails to acknowledge that the statutes governing WIS. STAT. ch. 51 proceedings have evolved over the decades such that both WIS. STAT. §§ 51.20 and 51.45(13) are available for treating a person's alcoholism, each without rendering the other superfluous.

¶26     For these reasons, I reject F.W.R.'s argument that an individual cannot be involuntarily committed for alcoholism under WIS. STAT. § 51.20 and conclude that an involuntary commitment for an individual who is "drug dependent" under § 51.20 includes an individual in need of treatment for alcoholism.

### III.  Probable Cause Hearing

¶27     Next, F.W.R. argues that the circuit court did not follow the proper procedures during the probable cause hearing.  According to F.W.R., the court erred by:  (1) allowing the County to convert the involuntary commitment petition from a WIS. STAT. § 51.45 petition to a WIS. STAT. § 51.20 petition without proper notice; and (2) failing to determine that there was probable cause to believe that F.W.R. satisfied the criteria for an involuntary commitment under § 51.20.  I reject these arguments for the following reasons.

¶28     First, the County's petition for involuntary commitment was filed under WIS. STAT. § 51.20, not WIS. STAT. § 51.45(13).  The County used the standard form petition for a § 51.20 commitment and explicitly alleged that F.W.R. satisfied the three main criteria for commitment under § 51.20:  (1) mental illness, drug dependence, or developmental disability; (2) suitability for treatment; and (3) dangerousness.  The form used by the County did not set forth any of the criteria for involuntary commitment under § 51.45(13).

14

¶29 In support of his argument, F.W.R. points to a single sentence that the County wrote on the petition form: "the subject habitually lacks self-control as to the use of alcohol to the extent that his health and social functioning are substantially disrupted." According to F.W.R., this language was drawn from WIS. STAT. § 51.45(13) and establishes that the County was petitioning for commitment under that statute. This language does not change my conclusion because it parrots the definition of alcoholism in WIS. STAT. § 51.01(1m), as previously referenced, not § 51.45(13). But even if this particular language was taken from § 51.45(13), it would not transform what would otherwise be a bona fide petition under WIS. STAT. § 51.20 into a petition under § 51.45(13).[9] Therefore, the County's petition did not need to be converted to a § 51.45(13) petition.

¶30 F.W.R. also argues that the circuit court did not determine that there was probable cause to believe that F.W.R. was a proper subject for treatment under WIS. STAT. § 51.20. Instead, F.W.R. contends that the court determined that he was a proper subject for "alcohol treatment" under WIS. STAT. § 51.45(13).[10] I disagree.

---

[9] As stated, both WIS. STAT. §§ 51.20 and 51.45(13) authorize involuntary commitments. At the probable cause hearing, a petition for commitment under either of these statutes may be converted to a petition for commitment under the other statute, so long as two criteria are satisfied: (1) the petitioner notifies the other parties and the circuit court prior to the probable cause hearing of its intent to proceed as though it petitioned for commitment under the other statute; and (2) the court determines that "there is probable cause to believe that the subject individual is a fit subject for treatment" under the other statute. Secs. 51.20(7)(dm), 51.45(13)(dg)1.

[10] Additionally, F.W.R. argues that the circuit court's probable cause determination was not sufficient because a person cannot be committed under WIS. STAT. § 51.20 for alcoholism. This argument fails because, as explained above, a person who is dependent on alcohol is drug dependent and may be committed under § 51.20.

¶31 During the course of the probable cause hearing, the County twice confirmed that it was petitioning for commitment under WIS. STAT. § 51.20, not WIS. STAT. § 51.45(13). After the evidence was presented, the circuit court explicitly stated that it was proceeding under § 51.20, and it determined that there was probable cause to believe that the criteria for commitment under § 51.20 were satisfied. F.W.R. argues that the court must have been operating under § 51.45(13) because it stated at one point that F.W.R.'s "inability to stop drinking is impairing his life and his health substantially," language that shares some similarities with § 51.45(13)(a)1. This argument fails because the court explained immediately after this statement that it was referencing the dangerousness standard set forth under § 51.20(1)(a)2.c., which requires "a substantial probability of physical impairment or injury to himself or herself or others." Accordingly, I reject F.W.R.'s argument that the court followed an improper procedure during the probable cause hearing.

## IV. The County's Burden of Proof

¶32 Next, F.W.R. argues that the County did not satisfy its burden of proving the criteria for involuntary commitment under WIS. STAT. § 51.20. To reiterate, the County has the burden of proving the following pertinent criteria under § 51.20 by clear and convincing evidence: (1) the person is drug dependent; (2) the person is a "proper subject for treatment"; and (3) the person is "dangerous." Sec. 51.20(1)(a). I conclude that the County met its burden on each of these elements.

### A. Drug Dependence

¶33 As noted above, "drug dependence" is defined as "a disease that is characterized by a person's use of one or more drugs that is beyond the person's

16

ability to control to the extent that the person's physical health is substantially impaired or his or her social or economic functioning is substantially disrupted." WIS. STAT. § 51.01(8). For the following reasons, the County met its burden with respect to proving drug dependence.

¶34 First, the County provided clear and convincing evidence that F.W.R.'s use of alcohol was beyond his ability to control. Dr. Marcus testified that F.W.R. was dependent on alcohol because of his "extensive history" of "very heavy alcohol usage over a number of years." Dr. Marcus also opined that F.W.R. had been "medicating with alcohol" to alleviate the symptoms of his mental health issues. Similarly, Dr. Ledoux testified that F.W.R. had a "severe alcohol use disorder" and a "chronic alcohol addiction."

¶35 Second, the County provided clear and convincing evidence that F.W.R.'s use of alcohol substantially impaired his physical health. The common definition of the word "impaired" is "being in an imperfect or weakened state or condition" such as "diminished in function or ability." *Impaired*, MERRIAM WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/impaired (last visited Nov. 18, 2024). Dr. Marcus testified that F.W.R. suffered from multiple medical conditions as a result of his alcohol consumption, including "advanced liver disease," "complicated alcohol withdrawal syndrome," and a condition known as "delirium tremens" that has a high mortality rate. Dr. Marcus opined that F.W.R. was "at [a] high risk of dying if he continues to consume alcohol." In his report, Dr. Marcus noted that F.W.R. had been hospitalized as recently as December 2022 for "complicated alcohol withdrawal," during which F.W.R. needed a respirator and a tracheostomy. Similarly, Dr. Ledoux stated that F.W.R. had "liver cirrhosis" and that his "alcohol abuse" was "plac[ing] his liver functioning and overall health status at serious risk." For these reasons, the expert

17

testimony and reports provided clear and convincing evidence that F.W.R.'s alcoholism has substantially impaired his physical health, such that his continued use of alcohol placed him at a high risk of dying.

## B. Proper Subject for Treatment

¶36 The County also has the burden of showing that F.W.R. is a "proper subject for treatment" under WIS. STAT. § 51.20(1)(a)1. "Treatment" is defined in WIS. STAT. ch. 51 as "those psychological, educational, social, chemical, medical or somatic techniques designed to bring about rehabilitation of a mentally ill, alcoholic, drug dependent or developmentally disabled person." WIS. STAT. § 51.01(17). The key determination for applying this definition is whether the person is capable of rehabilitation. *Fond du Lac County v. Helen E.F.*, 2012 WI 50, ¶30, 340 Wis. 2d 500, 814 N.W.2d 179. For example, our supreme court has held that a person suffering from Alzheimer's disease was not capable of rehabilitation because her condition was "untreatable and incurable." *Id.*, ¶38.

¶37 Here, the County provided clear and convincing evidence that F.W.R. was capable of rehabilitation. Although Drs. Marcus and Ledoux disagreed as to the level of treatment facility needed to treat F.W.R., both agreed that F.W.R.'s alcoholism was treatable in that it could be remedied by "psychological, educational, social, chemical, medical or somatic techniques."[11] *See* WIS. STAT. § 51.01(17). There is no evidence in the record that F.W.R.'s

---

[11] In addition to determining that F.W.R. is a "proper subject for treatment," the circuit court must also designate the "maximum level of inpatient facility … that may be used for treatment." WIS. STAT. § 51.20(13)(c)2. Here, the court agreed with Dr. Marcus and determined that a locked inpatient facility was the "maximum level of inpatient facility" for F.W.R.'s treatment. On appeal, F.W.R. does not challenge the court's designation of the maximum level of inpatient facility and I do not address it further.

alcoholism was an "untreatable and incurable" condition. *See Helen E.F.*, 340 Wis. 2d 500, ¶38.

¶38 F.W.R. argues that the circuit court's determination as to his suitability for treatment was improper because it was based on the court's "personal or professional experiences." Specifically, F.W.R. points to the court's statement in its oral ruling that, in its "experience in alcohol [c]ourt," "the alcoholics … say after a few months of sobriety … their brain clears [and] they're able to think more clearly." F.W.R.'s argument fails because this court independently reviews the question of whether the County met its burden of showing by clear and convincing evidence that F.W.R. was a proper subject for treatment. *See Melanie L.*, 349 Wis. 2d 148, ¶88 n.25. The circuit court's reference to its own experience does not affect my conclusion that the County satisfied its burden of proof that F.W.R. was a proper subject for treatment.

### C. Dangerousness

¶39 Finally, the County must show by clear and convincing evidence that F.W.R. is "dangerous" under one of the standards set forth in WIS. STAT. § 51.20(1)(a)2. As stated, relevant to this appeal, § 51.20(1)(a)2.c. requires proof that the person "[e]vidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals." Sec. 51.20(1)(a)2.c. This provision also requires proof of at least one of the following criteria: (1) there is not a "reasonable provision for the subject individual's protection … available in the community"; or (2) there is not "a reasonable probability that the individual will avail himself or herself of these

services." Sec. 51.20(1)(a)2.c. For the following reasons, the County met its burden with respect to dangerousness under this standard.

¶40 First, the County provided clear and convincing evidence of a pattern of recent acts or omissions showing that F.W.R.'s judgment was impaired such that there was a substantial probability of physical impairment or injury to himself. As stated, the common meaning of "impaired" is "being in [a] … weakened state or condition" such as being "diminished in function or ability." *Impaired*, MERRIAM WEBSTER DICTIONARY, *supra*. Dr. Marcus testified that F.W.R. had impaired judgment as evidenced by a pattern of recent acts in which F.W.R. minimized the consequences of his heavy alcohol consumption. Dr. Marcus also indicated that F.W.R.'s history of mental health issues, such as anxiety and depression, contributed to his impaired judgment. Dr. Marcus opined in his report that this pattern of impaired judgment caused F.W.R. to continue consuming alcohol despite the serious medical consequences of doing so, such as hospitalization and even the risk of premature death. According to Dr. Marcus, there was a "substantial probability" that F.W.R.'s impaired judgment was inhibiting his ability to stay sober and avoid the negative health consequences of drinking alcohol.

¶41 Similarly, Dr. Ledoux stated that F.W.R.'s judgment was likely being affected by his "chronic alcohol addiction." Dr. Ledoux testified that F.W.R.'s impaired judgment was creating a "substantial probability of serious harm to himself" and that F.W.R. was "continu[ing] to abuse alcohol despite deleterious effects on his mental and physical health," including liver cirrhosis and F.W.R.'s overall health status.

¶42    Second, the County provided clear and convincing evidence that the treatment services F.W.R. was receiving in the community did not reasonably provide for his protection. Dr. Marcus testified that F.W.R. had been consuming large amounts of alcohol despite his participation in, and continued willingness to participate in, the CSP and the panoply of services he had been receiving and regularly accessing in the community. According to Dr. Marcus, the services available in the community were not adequate for F.W.R.'s needs and would not be adequate until F.W.R. became medically stable. Similarly, Dr. Ledoux noted in his report that F.W.R. had been consistently and voluntarily engaged in substance abuse counseling, but was still struggling to maintain sobriety. Dr. Ledoux also stated that, although F.W.R. admitted that "daily intoxication [was] more than likely impact[ing] his memory and ability to maintain treatment adherence," he had no plan to stop drinking alcohol. In other words, F.W.R.'s alcoholism was diminishing his cognition and ability to comply with treatment services in the community. In sum, I conclude that the County showed by clear and convincing evidence that F.W.R. was "dangerous" under WIS. STAT. § 51.20(1)(a)2.c.

¶43    F.W.R. argues that the County did not meet its burden of showing that he was dangerous under WIS. STAT. § 51.20(1)(a)2.c. because his judgment was not "impaired." According to F.W.R., the evidence shows only that he was making "bad decisions," not that he had a "diminished ability to make evaluations and reach conclusions." This argument fails because, as discussed above, the County provided ample evidence that F.W.R.'s ability to assess and evaluate his actions was compromised. In particular, Dr. Marcus explained that F.W.R.'s impaired judgment was evidenced by his inability to limit his alcohol consumption despite knowing the severe health consequences, including a risk of early mortality.

¶44    F.W.R. also argues that the circuit court failed to make specific factual findings with respect to dangerousness as required under ***D.J.W.***  In that case, the circuit court did not specify the standard for dangerousness under WIS. STAT. § 51.20(1)(a)2. on which D.J.W.'s commitment was based, and D.J.W. and the county disagreed on appeal as to which dangerousness standard the court applied. ***D.J.W.***, 391 Wis. 2d 231, ¶¶36-39.  Given these "conflicting messages … regarding the statutory basis for [D.J.W.'s] commitment," our supreme court directed that, in the future, circuit courts must "make specific factual findings with reference to the subdivision paragraph of § 51.20(1)(a)2. on which the []commitment is based." ***Id.***, ¶40.

¶45    Here, the circuit court satisfied this obligation under ***D.J.W.***  In its oral ruling, the court determined that the County proved all the elements of dangerousness under WIS. STAT. § 51.20(1)(a)2.c. and made the following findings of evidentiary fact:

> [H]e's dangerous because he has a substantial probability of physical impairment or injury to himself … [d]ue to his impaired judgement [sic] …[.]  [B]oth [d]octors agreed with that and I think the evidence is clear and convincing probably almost to beyond a reasonable doubt that … his continued drinking which he [has] done in the community[,] even though he has been in the CSP program[,] is going to kill him. And this is shown by a pattern of recent acts or [o]missions meaning that while he was under the CSP program he did not stop drinking.

Additionally, the court's written order for commitment explicitly indicates that F.W.R. was dangerous under § 51.20(1)(a)2.c.  In making these findings, the court acknowledged the "serious nature" of the commitment proceeding and ensured "meaningful appellate review" of the basis for his commitment. *See id.*, ¶¶42-44 (explaining the justifications for our supreme court's directive).  Accordingly, I

22

conclude that the court satisfied its obligation under ***D.J.W.*** in making specific findings of evidentiary fact in legally concluding that F.W.R. was "dangerous" under § 51.20(1)(a)2.c.

¶46 In sum, I conclude that the County met its burden of proving by clear and convincing evidence the criteria for F.W.R.'s involuntary commitment under WIS. STAT. § 51.20.

## CONCLUSION

¶47 For the foregoing reasons, I affirm the order of the circuit court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.